No. 149.—Efford M. Booker and others, executors, &c. plaintiffs in error, *vs.* James S. Booker and others, defendants in error.

[1.] Every bill to perpetuate testimony, is a bill to take testimony *de bene esse* and the evidence thus taken cannot be read at the hearing or trial, if the witness be alive and capable of examination.

[2.] Every bill to take evidence *de bene esse*, is a bill to perpetuate testimony.

[3.] Bills of both descriptions have their origin in an order of the Court of. Chancery passed during the reign of *Philip & Mary.*

[4.] This mode of taking testimony is a departure from the ordinary method, and the Court has laid down strict rules in regard thereto to prevent its abusive use, and to protect the rights of parties.

[5.] A bill technically called a bill to perpetuate evidence, must set forth facts which show either that the matter to which the testimony will apply, cannot be immediately investigated in a Court of Law ; or if it can be so investigated, the sole right of action belongs to the other party; or that the opposite party has interposed some impediment to an immediate trial of the suit, so that there is danger of a loss of the evidence before trial.

[6 ] A party in possession of property, in respect to which he apprehends a suit, is not the only person who may file a bill to perpetuate testimony, but any person whose rights are likely to be endangered by the loss of evidence ; and when it is not the fault of such person, that the facts cannot be investigated at law, may have this remedy ; but his bill must state all the facts necessary to entitle him to it.

[7.] The bill in this case sets forth all the facts necessary to entitle him to an order to perpetuate the testimony of the witness, and the prayer that the testimony may be taken *de bene esse*, does not change its distinctive character.

[8.] The bill is amendable, if the facts are not stated with sufficient distinctness.


In Equity, in Wilkes Superior Court. Decision by Judge JAMES THOMAS, September Term, 1856.

This was a bill filed by James J. Booker and others to perpetuate the testimony of one Moses Sutton, an aged man, and of infirm health, laboring under two diseases, viz: consumption and dyspepsia ; as to the value of the hire and other things in reference to a certain slave for which the complainants intended to bring suit against the executors of R. Booker; but which suit could not be brought, because 12 months had not expired since the death of R. Booker. To this bill a demurrer was filed.

1st. Because this was not a case authorizing such a bill.

2d. Because the name of the slave is not given, and the facts are too loosely stated.

The Court over-ruled the demurrer, and this decision is is assigned as error.

REESE; TOOMBS, for plaintiffs in error.

BARNETT; THOMAS, for defendants in error.

*By the Court.*—McDonald, J. delivering the opinion.

The bill in this case was filed to perpetuate the testimony of Moses Sutton. The prayer is, that the testimony may be taken *de bene esse.* The complainants allege in their bill that they are about to file a bill in Equity against the defendants, as the executors of Richardson Booker, deceased, for an account of a certain slave and other property held by the testator in his lifetime, the property of the complainants, and the profits and income arising from the hire and labour of the slave and other property; that the testator, in his lifetime, and the defendants, his executors, since his death, have failed to account for the said slave, other property and profits; that suit has not been instituted, because twelve months have not elapsed since the probate of the will; that Moses Sutton, 70 years old or upwards, of infirm heath, afflicted with consumption and dyspepsia, is the sole witness to a material fact in the cause to be instituted, to-wit: that the defendant's testator, in his lifetime, acknowledged his obligation to account to the complainants for the negro and his annual value, and the value of other property; and that there is danger of said evidence being lost to complainants.

The defendants demurred to the bill on two grounds:

1st. That complainants have no right, in Equity, upon the facts stated in their bill, to proceed to take the testimony of Moses Sutton, the witness, *de bene esse,* there being no allegation that an action at Law was pending in any Court for and concerning the matters stated in said bill, which must have been the case to take the testimony *de bene esse.*

2d. That the charges and allegations of complainants in said bill, respecting the rights therein spoken of, are so general, and inadequate, and uncertain, that no equitable relief can be granted respecting the same.

The Court below over-ruled the demurrer, and his decision is excepted to.

[1.] The defendants' Counsel insist that the bill cannot be

supported to take the testimony of the witness *de bene esse,* because there is no action pending. Every bill to perpetuate · testimony is a bill to take testimony *de bene esse*; that is, to take the depositions of the witness to be allowed at the hearing of the cause *pending or to be instituted, on condition* that the witness, for any· cause cannot, be produced for examination ; or that it is just and proper, under a full consideration of the circumstances of the case, that the evidence should be read.

[2.] So, every bill to take testimony *de bene esse,* is a bill to perpetuate testimony. It is to take the evidence of a witness who, for certain specified reasons, might not be able to attend the trial. The American Editor of *Mitford's Chancery Pleading* remarks, that "bills to perpetuate testimony seem divisible into two kinds, namely: bills to perpetuate testimony specifically, so called; and bills to take testimony *de bene esse.*" (*P.* 62, *N.* (1.)

[3.] It seems, from an order of the Court of Chancery in England, in the reign of *Philip & Mary,* that the ·Chancellors had placed many restraints on the perpetuation of testimony, but that the examiners of the said Courts had not, until recently, been restrained in the examination of witnesses in perpetual memory, in their offices, whereunto they had been sworn; whereupon, that order was passed which is, undoubtdely, the foundaticn of the bills since used to perpetuate evidence. (See 2 *Am. Ed. Gresley's Eq. Ev.* 129.)

By that order, the party who desired to have a witness examined, was required to frame a bill containing the cause why he would have the witness examined; and thereupon, should sue out a writ for that purpose ordained, and deliver it to the opposite party, whereby he might have notice to have the .same, or any other witnesses examined. (*Id.*) Bills which are now called bills to perpetuate testimony, and bills to take evidence *de bene esse,* have this common origin. In neither case can the evidence taken·under this proceeding be used, if the witness is at the trial or is· able to·attend, or his testimony can be had in the usual way.

[4.] It is a departure from the ordinary mode of taking evidence, and the Court of Chancery has been very strict in its requisitions upon parties who apply for the extraordinary privilege, that it may be well assured that the exigency of the case demand it.

[5.] The Court will not allow its authority to be used to fish for evidence to sustain a projected law suit; hence, where the application is to perpetuate testimony in cases where there is no suit, or one party is impeded by the act of the other, from prosecuting a pending suit, the applicant must show that "the facts to which the testimony of the witnesses proposed to be examined relates, cannot be immediately investigated in a Court of Law; or, if they can be so investigated, that the sole right of action belongs to the other party; or that the other party has interposed some impediment (as an injunction) to an immediate trial of the right in the suit at Law; so that before the investigation can take place, the evidence of a material witness is likely to be lost, by his death or departure from the country." (*Story's Eq. Pleading*, §303.)

[6.] An opinion seems to prevail to some extent, that a bill to perpetuate testimony will not lie at the instance of a party who has not possession of the property which is to be the subject of litigation; and that such proceeding will only be allowed to a party who is in possession, whose right or title is liable to disturbance at the instance of another whose movements the complainant cannot control. This is a mistake. It is true, that a complainant who has a right of action for property out of his possession, cannot sustain a bill to perpetuate testimony before action brought, because he has it in his power to sue and obtain the evidence in the usual way.

But the instance stated is not the only one in which testimony may be perpetuated. In every case in which a complainant has a vested interest in a matter which is likely to become the subject of litigation, however small or contingent, and it cannot be investigated in a Court of Law or Equity,

either from his inability from any legal cause to institute a suit, if he should be the plaintiff; or having sued, he is impeded by the act of the other party from prosecuting his suit, and his interest may be endangered if the evidence in support of it is lost, he may have the testimony of his witnesses perpetuated. This is the principle to be collected from the authorities, and it is in accordance with justice and common sense. (*Story's Eq. Pl.* §301, *&c.; Lube's Eq. Pl.* 134; *Gres. Eq. Ev.* 130; *Smith's Ch. Pr.* 484.)

[7.] The bill should state every matter which is necessary to entitle the complainants to this remedy, to-wit: their interest; the reason why suit cannot be instituted; the subject matter of the controversy, and the proof they propose to make; the interest or the duty of the defendants to contest the right or title; the ground of necessity for perpetuating the evidence.

This bill is full on these points, and we are of opinion that the prayer merely, that the testimony may be taken *de bene esse*, does not divest it of its distinctive character as a bill to perpetuate testimony given to it by its structure. The bill is amendable, in this respect, if an amendment was necessary. A bill to perpetuate testimony may be amended, in England, after the testimony has been taken under it. (*Story's Eq. Pl.* note to §306.)

Under our liberal Statutes of amendment, it is impossible that a bill should be dismissed for a mere technical error. The first ground of demurrer ought to have been over-ruled.

[8.] The second ground of demurrer raises the question of the sufficiency of the allegations to entitle the complainant to the order he prays for. It is insisted that the allegations of the bill are insufficient, because the name of the slave is not set forth, for whom and for whose hire an account is to be asked, and because the other property is not described. The allegations in regard to the slave and the hire, are as full as usual in a bill calling a party to account for the value and hire of slaves, but not so in respect to the other property. The bill was amendable in that particular, and an amend-

ment ought to have been ordered by the Court, if he had: considered it defective.   The testimony sought for had been taken; and if it is confined to the slave and the hire, it ought unquestionably to be received; and if it goes beyond, to other property, it will depend on the notice which the. defendant had, through the direct interrogatories, of the evidence sought to be made, so as to enable him to cross-examine the witness. in regard thereto, whether that part of the evidence should be read at the hearing of the cause.   We will not send the case back merely for the purpose of making an amendment which would be allowed as a matter of right.

Judgment affirmed.